UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────

MICHAEL J. CARLSON, SR., Individually
  and as Administrator of the Estate of
  Claudia D'Agostino Carlson and as
  Assignee of William Porter,

                              Plaintiff,

          v.                                         **DECISION AND ORDER**
                                                      11-CV-874-A

AMERICAN INTERNATIONAL GROUP, INC.,
AIG DOMESTIC CLAIMS, INC.,
AMERICAN ALTERNATIVE INSURANCE CO.,
NATIONAL UNION FIRE INSURANCE
  COMPANY OF PITTSBURGH, PA, and
DHL EXPRESS (USA) INC. f/k/a DHL
  Worldwide Express, Inc.,

                              Defendants.

─────────────────────────────

        This is an auto accident insurance coverage dispute.  It follows an earlier

state court wrongful death and personal injury verdict against defendant DHL

Express (USA) Inc. ("DHL") and others that was overturned on appeal as against

defendant DHL.  The case arises from attempts by the plaintiff, Michael J.

Carlson, Sr., Individually and as Administrator of the Estate of Claudia D'Agostino

Carlson, and as Assignee of William Porter, to recover under two insurance

policies issued to DHL on the theory that other persons who are liable for the

accident were covered under the insurance policies issued to DHL even though

they were not named in the insurance policies and even though the verdict against DHL was overturned on appeal.

The case was removed from state court pursuant to 28 U.S.C. § 1441(a) by the defendants, American International Group, Inc., AIG Domestic Claims, Inc., American Alternative Insurance Co., National Union Fire Insurance Company of Pittsburgh, PA, and DHL, based upon alleged federal-question jurisdiction under 28 U.S.C. § 1331.  It is now before the Court on a motion filed by plaintiff Carlson to remand it to state court pursuant to 28 U.S.C. § 1447(c).

For the reasons that are stated below, plaintiff Carlson's motion to remand the case is granted.  The Court lacks subject matter jurisdiction because the case is not within the narrow category of cases in which a state-law claim arises under federal law.

## **BACKGROUND**

On July 7, 2004, Claudia D'Agostino Carlson suffered severe injuries in an automobile accident.  The accident took place on Niagara Falls Boulevard in the town of Wheatfield, New York.  Ms. D'Agostino Carlson's vehicle was hit, head on, by a commercial delivery van being driven by William Porter as Mr. Porter was trying to avoid colliding with another vehicle.

Ms. D'Agostino Carlson passed away on July 20, 2004 as a result of her injuries.  She is survived by her husband, Michael J. Carlson, Sr., the plaintiff in this action, and by their three children.

The delivery van that collided with Ms. D'Agostino Carlson's vehicle was owned by MVP Delivery and Logistics, Inc. ("MVP").  It was carrying property for DHL pursuant to a written cartage contract between MVP and DHL.  The driver of the delivery van, Mr. Porter, was an employee of MVP, but Mr. Porter was on a personal errand at the time of the accident.

A wrongful death and personal injury trial in state court resulted in a jury verdict in favor of Ms. D'Agostino Carlson's estate and plaintiff Carlson individually against MVP, DHL, Mr. Porter, and others, and judgment was entered on March 13, 2007.  On appeal, the verdict against DHL was set aside on the ground that DHL was not liable for the accident based upon a theory of *respondeat superior* due to the negligence of the driver of the delivery van, Mr. Porter, because Mr. Porter was not acting within the scope of his employment with MVP at the time of the accident.  Carlson v. Porter, 53 A.D.2d 1129 (4th Dep't 2008).  A final judgment of $7.3 million was entered against Mr. Porter, MVP[1], and other defendants who are not named here, on May 12, 2009.

---

[1] MVP was also found on appeal not to be liable for the accident on the theory of *respondeat superior* since Mr. Porter was not acting within the scope of his employment with MVP at the time of the accident.  Carlson v. Porter, 53 A.D.2d at 1133.  MVP remained liable pursuant to N.Y. Vehicle & Traffic Law § 388, however, because Mr. Porter was a permissive user of the delivery van owned by MVP.  Id.

Although the jury verdict against DHL was set aside on appeal, this case was filed by plaintiff Carlson on January 25, 2011, in New York State Supreme Court, County of Niagara, to obtain proceeds of two DHL insurance policies, one issued by defendant American Alternative Insurance Co., the other by defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), to satisfy the $7.3 million judgment against Mr. Porter, MVP, and others.  The plaintiff alleges a breach of contract and seeks direct recovery on the DHL insurance policies pursuant to New York Insurance Law § 3420, even though DHL was found on appeal not to be liable for the accident, on the ground that Mr. Porter and MVP, who are liable, qualified as  "insured"  persons covered pursuant to the terms of the DHL insurance policies, the written cartage contract between MVP and DHL, and the course of dealing between MVP and DHL.  The plaintiff is also seeking damages resulting from alleged tortious conduct by DHL and the defendants, including the defendants American International Group, Inc. and AIG Domestic Claims, Inc., which are affiliates of National Union, partly for the defendants' refusals to pay the plaintiff as a judgment creditor and as the assignee of Mr. Porter's rights as an insured person.

The defendants filed motions to dismiss plaintiff Carlson's complaint in state court.  Based upon arguments of the plaintiff in response to the defendants' motions to dismiss, on October 19, 2011, the case was removed to this Court by defendant American Alternative Insurance Co. ("AAIC") pursuant to 28 U.S.C. §

4

1441(a) based upon federal-question jurisdiction.  On November 15, 2011, the plaintiff moved to remand the case to state court pursuant to 28 U.S.C. § 1447(c) based upon alleged procedural defects in the removal and a lack of federal subject matter jurisdiction[2].

## **DISCUSSION**

Defendant AAIC's Notice of Removal acknowledges that plaintiff Carlson's complaint asserting the state-law breach of contract and direct recovery claim did not raise any issue of federal law and AAIC maintains that no substantial federal question was reasonably ascertainable from the complaint alone.  AAIC alleges that the plaintiff later asserted a federal question when opposing the defendants' motions to dismiss the complaint because the plaintiff relied upon an endorsement in the AAIC-DHL policy required by the federal Motor Carrier Act of 1980 that provides for mandatory-minimum personal injury liability insurance coverage for the public.  See 49 U.S.C. § 31139.

Plaintiff Carlson moved to remand the case to state court on the ground that the removal by the insurance company AAIC did not timely occur within 30

---

[2] The defendants also moved in this Court to dismiss the plaintiff's complaint for failure to state a claim upon which relief can be granted.  The question whether the Court has subject matter jurisdiction is a distinct question that is to be answered prior to the question whether the plaintiff can state a claim for relief.  Robinson v. The Government of Malaysia, 269 F.3d 133, 141 (2d Cir. 2001). The Court therefore directed that further briefing of the defendants' motions to dismiss be stayed by Text Order issued November 16, 2011.

days of AAIC's receipt of the complaint in February of 2011, and on the

alternative ground that DHL did not timely file unambiguous proof of consent

to the removal in October of 2011.  The plaintiff also disputes that there is a

federal question and argues that the federal law requiring a commercial motor

carrier to have mandatory-minimum personal injury liability insurance coverage

poses neither a necessary nor a sufficiently substantial question of law for

federal-question jurisdiction to lie pursuant to 28 U.S.C. § 1331.

Because Fed. R. Civ. P. 12(h)(3) and 28 U.S.C. § 1447(c) require the Court

to dismiss any case found to be lacking subject matter jurisdiction, the Court's

analysis begins with its subject matter jurisdiction.  The applicable law is well-

settled.

Federal courts are courts of limited jurisdiction and  "possess only that

power authorized by Constitution and statute, which is not to be expanded upon

by judicial decree."  Kokkonen v. Guardian Life Insurance Co. of America, 511

U.S. 375, 377 (1994).  The statutory authority to remove a case from state court

to federal court, 28 U.S.C. § 1441, et seq., permits removal only if the case is

within the federal courts' limited jurisdiction and could properly have been brought

in federal court in the first instance.  See 28 U.S.C. § 1447(c) (a case lacking

subject matter jurisdiction is to be remanded); Caterpillar Inc. v. Williams, 482

U.S. 386, 392 (1987); Montefiore Medical Center v. Teamsters Local 272, 642

F.3d 321, 327 (2d Cir. 2011).  Any doubts about the propriety of removal from

state court must be resolved against removal  "out of respect for the limited

jurisdiction of the federal courts and the rights of states."  In re Methyl Tertiary

Butyl Ether ("MTBE") Product Liability Litigation, 488 F.3d 112, 124 (2d Cir.

2007); Lupo v. Human Affairs, 28 F.3d 269, 274 (2d Cir. 1994).  Statutory

authority for removal is therefore strictly construed.  Syngenta Crop Protection,

Inc. v. Henson, 537 U.S. 28, 32 (2002).

        The burden of establishing that a case is properly removed from state court

on the ground that it is within a federal court's original jurisdiction rests upon the

party seeking removal.  See Hertz Corp. v. Friend, 130 S.Ct. 1181, 1194-95

(2010) (diversity jurisdiction); Blockbuster, Inc. v. Galeno, 472 F.3d 53, 57 (2d Cir.

2006).  To demonstrate that federal-question jurisdiction exists over a state-law

claim, a party seeking removal has to establish that the  "state-law claim

necessarily raise[s] a stated federal issue, actually disputed and substantial,

which a federal forum may entertain without disturbing any congressionally

approved balance of federal and state judicial responsibilities."  Grable & Sons

Metal Products, Inc., v. Darue Engineering & Manufacturing, 545 U.S. 308, 314

(2005) (construing 28 U.S.C. § 1331).  The category of cases alleging a state-law

claim that arises under federal law is  "special and small"  and  "slim."  Empire

Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 699 (2006); see Sortisio

v. Accetta, 2009 WL 4571814 *4-6 (W.D.N.Y. Dec. 7, 2009).

A short and plain statement of the jurisdictional basis for removal is required in a notice of removal.  See 28 U.S.C. § 1446(a).  "[I]in determining whether jurisdiction is proper, [courts] look only to the jurisdictional facts alleged in the Notice[] of Removal."  In re Methyl Tertiary Butyl Ether ("MTBE") Product Liability Litigation, 488 F.3d at 24; see Whitaker v. American Telecasting, 261 F.3d 196, 205 (2d Cir. 2001).  Discretion to allow a party seeking removal to amend a jurisdictional statement in a notice of removal is limited.  See Lupo v. Human Affairs Intern., Inc., 28 F.3d 269, 274 (2d Cir. 2004); 28 U.S.C. § 1653.

In general, "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint."  Caterpillar Inc. v. Williams, 482 U.S. at 392; Sullivan v. American Airlines, Inc., 424 F.3d 267, 271 (2d Cir. 2005).  "[T]he complaint must [be found to] allege a claim that arises under the Constitution or laws of the United States and that is neither made solely for the purpose of obtaining jurisdiction nor wholly insubstantial and frivolous."  Carlson v. Principal Financial Group, 320 F.3d 301, 306 (2d Cir. 2003).  This prudential jurisdictional review of the claim is not to be confused with an assessment of the legal validity of the claim or an assessment of the merits of the claim.  Id.  "A district court does not, of course, decide a case on the merits in order to decide if it has jurisdiction."  Robinson v. The Government of Malaysia, 269 F.3d 133, 141 (2d Cir. 2001).

8

A plaintiff may not "defeat removal by omitting to plead necessary federal questions in a complaint." Franchise Tax Bd. v. Constr. Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 22 (1983). But a plaintiff remains the "master of the complaint" and may elect to forgo a claim involving a federal question even if such a claim is available. Caterpillar, 482 U.S. at 392; see e.g., Domnister v. Exclusive Ambulette, Inc., 607 F.3d 84, 89-90 (2d Cir. 2010).

In this case, the complaint filed by plaintiff Carlson in state court alleges that the terms of the defendants' insurance policies, the written cartage contract between MVP and DHL, and the course of dealing between MVP and DHL, resulted in MVP and its employee, Mr. Porter, being authorized and permissive users of the delivery van that was in the accident and "insured" persons entitled to coverage pursuant to the insurance policies just as if MVP and Mr. Porter had been explicitly named as insured persons in the policies. See Doc. 6-3., ¶¶ 4-6. The plaintiff's complaint refers neither to federal law nor to a federal-law issue. The state-law claim as alleged in the complaint turns upon the interpretation of the terms of the insurance policies in light of the cartage contract and the parties' performance of the cartage contract.

In the Notice of Removal, defendant AAIC alleges that a federal question was first raised on October 6, 2011, when plaintiff Carlson opposed the defendants' motions to dismiss the claim in state court as alleged in the complaint by relying on a so-called MCS-90 endorsement in the AAIC-DHL liability

9

insurance policy[3].  AAIC alleges that the plaintiff's filings assert a new claim under the MCS-90 endorsement.

An MCS-90 is a form of endorsement in personal injury liability insurance policies that all commercial motor carriers are required to include by the Motor Carrier Act of 1980, 49 U.S.C. § 31139, and regulations at 49 C.F.R. § 387.1 et seq.  The purpose of the MCS-90 endorsement is to protect the public from an inadequately insured motor carrier by providing that the required minimum recovery will be available to a person who is injured in an accident with a motor carrier.  See generally, The Integral Insurance Co. v. Lawrence Fulbright Trucking, Inc., 930 F.2d 258, 260 (2d Cir. 1991); Pierre v. Providence Washington Insurance Company, 99 N.Y.2d 222, 225-26 (2002).

The federally-mandated form of the MCS-90 endorsement incorporates the statutory requirement of mandatory-minimum insurance coverage and also nullifies certain policy limitations in motor carriers' insurance.  49 C.F.R. § 387.15. Federal regulations set the mandatory-minimum coverage at $750,000 for motor carriers of nonhazardous property and at $5 million for carriers of hazardous substances.  49 C.F.R. § 387.9.

---

[3]  AAIC relies upon 28 U.S.C. § 1446(b), which permits removal within 30 days of service of a pleading or  "other paper from which it may first be ascertained that the case is one which is or may become removable"  and filed its Notice of Removal on October 19, 2011, having received plaintiff Carlson's state court filings citing the MCS-90 endorsement on October 6, 2011.

The MCS-90 endorsement in the AAIC insurance policy requires payment

of a:

> final judgment against the insured . . . from negligence in
> the operation, maintenance or use of motor vehicles . . .
> regardless of whether or not each motor vehicle is
> specifically described in the policy and whether or not such
> negligence occurs on any route or in any territory
> authorized to be served by the insured or elsewhere.

Doc. 7-2 (ellipsis supplied).  <u>See</u> 49 C.F.R. § 387.15.  It provides that:  "no

condition . . . contained in the policy . . . shall relieve the [insurance company]

from liability or from the payment of any final judgment."  Doc. 7-2 (ellipsis

supplied).  But it also provides that:

> all terms, conditions, and limitations in the policy to which
> the endorsement is attached shall remain in full force and
> effect as binding between the insured and the [insurance]
> company.  The insured agrees to reimburse the company
> for any payment made by the company on account of any
> accident, claim, or suit involving breach of the terms of the
> policy, and for any payment that the company would not
> have been obligated to make under the provisions of the
> policy except for the agreement contained in this
> endorsement.

Doc 7-2; 49 C.F.R. § 387.15.

The defendants begin their argument that a federal question was raised

giving rise to federal subject matter jurisdiction by stressing that the MCS-90

endorsement is a creation of federal law and that the endorsement must be

interpreted pursuant to federal law.  While that is correct,  "the mere presence of

a federal issue in a state cause of action does not automatically confer

11

federal-question jurisdiction."  <u>Merrell Dow Pharmaceuticals Inc. v. Thompson</u>, 478 U.S. 804, 813 (1986).  Personal injury liability insurance coverage claims are breach of contract claims ordinarily governed by state law.  <u>Insurance Corporation of New York v. Monroe Bus Corp.</u>, 491 F.Supp.2d 430, 435 (S.D.N.Y. 2007).  The presence of a federal issue in a state-law claim has never been  "a password opening federal courts to any state action embracing a point of federal law."  <u>Grable & Sons Metal Products, Inc., v. Darue Engineering & Manufacturing</u>, 545 U.S. 308, 314 (2005).  Federal issues in a state-law claim ordinarily do not give rise to federal-question jurisdiction under 28 U.S.C. 1331. <u>See</u> <u>Empire Healthchoice Assurance, Inc. v. McVeigh</u>, 547 U.S. 677, 699-701 (2006).

In further arguing that a federal question giving rise to subject matter jurisdiction is alleged, the defendants rely upon <u>Insurance Corporation of New York v. Monroe Bus Corp.</u>, 491 F.Supp.2d 430 (S.D.N.Y. 2007), a decision finding that issues involving a similarly-worded federal motor carrier insurance endorsement, an MCS-90B[4], raised a federal question sufficient to confer original jurisdiction pursuant to 28 U.S.C. § 1331.  In <u>Monroe Bus Corp.</u>, the plaintiff, Insurance Corporation of New York, sought reimbursement from its named

---

[4]  <u>Monroe Bus</u> notes that the MCS-90B and MCS-90 endorsements are substantially the same.  491 F.Supp. 2d at 440 n.8.  The MCS-90B endorsement is required in liability insurance policies for passenger motor carriers pursuant to the Bus Regulatory Reform Act of 1982 at 49 U.S.C. § 31138.

insured pursuant to the terms of a federal MCS-90B endorsement for more than a half million dollars of damages, costs and fees that the plaintiff insurance company had paid on behalf of its named insured specifically because the MCS-90B endorsement nullified a notice condition on the insurance coverage and precluded the plaintiff insurance company from disclaiming coverage for a late notice of the claim against its policy until after a default judgment had been entered against the named insured.  491 F.Supp.2d at 431-33.

In finding federal-question jurisdiction, the court in <u>Monroe Bus Corp.</u> stated:

> The scenario presented — an insurance company seeking reimbursement for a payment required *only* because of a federally-required endorsement, where the endorsement specifically provides for reimbursement — is not a scenario that even exists under state law.  Hence, the reimbursement claim in question is based on federally-created rights.

<u>Id.</u> at 437 (emphasis in original).  In other words, because the claim of the Insurance Corporation of New York for reimbursement from its named insured of money that the insurer had paid to satisfy the insured's liability was entirely dependent upon the language of the MCS-90B, the claim was one over which federal jurisdiction existed.  <u>Id.</u>

In this case, the parties agree that the crux of plaintiff Carlson's claim against the defendants is that MVP and Mr. Porter qualify as unnamed insureds under the two DHL insurance policies.  <u>See</u> Doc. 32-1, pp. 14-15.  The parties

13

further agree that the MCS-90 endorsement is not itself insurance, but that it creates a suretyship triggered by a final judgment to provide a "safety net when other coverage is lacking." <u>See</u> Doc. 7-10, p. 10, pp. 11-15; <u>see</u> <u>In re Yale Express System, Inc.</u>, 362 F.2d 111, 114 (2d Cir. 1966); <u>see</u> <u>e.g.</u>, <u>Pierre v. Providence Washington Ins. Co.</u>, 99 N.Y.2d 222, 235 (2002).  The scenario presented here is that the plaintiff alleges a state-law breach of contract claim that DHL's insurance covers MVP and Mr. Porter, who are liable to the plaintiff for the accident, and that the federally-required MCS-90 endorsement in DHL's insurance may provide the federal mandatory-minimum recovery.  Unlike the claim for reimbursement of money already paid pursuant to the MCS-90B endorsement asserted in <u>Monroe Bus Corp.</u>, <u>supra</u>, this is a predominately state law claim.  By inviting the Court's reliance upon <u>Monroe Bus Corp.</u> to find federal-question jurisdiction, <u>see</u> Doc 32-1, p. 13, the defendants overlook that "it takes more [even] than a federal element to open the 'arising under' door" pursuant to 28 U.S.C. § 1331.  <u>Empire Healthchoice Assur., Inc.</u>, 547 U.S. at  701 (citation omitted).

The parties' characterization in the state court action before removal of plaintiff Carlson's claim as a separate and distinct federal claim followed after defendant AAIC asserted that the plaintiff's claim for direct recovery pursuant to New York Insurance Law § 3420 should be dismissed because the AAIC insurance policy was neither "issued or delivered" in New York state as is

14

required by § 3420.  In response to that assertion, the plaintiff cited the provision

in the MCS-90 endorsement that allows a direct action against a motor carrier for

payment on account of a personal injury judgment to proceed  "in any court of

competent jurisdiction against the company to compel such payment."  Doc. 7-10,

pp. 16-18.  The plaintiff himself characterized it as a  "separate"  "claim."  See id.

The defendants adopted that characterization to bolster a showing of a federal

question, but the above-quoted excerpt of the MCS-90 endorsement is no more

than AAIC's consent to venue in any court which has subject matter jurisdiction.

Suffice it to say that the plaintiff's reference to a consent-to-venue provision in the

MCS-90 endorsement as a  "claim"  does not transform the essential state-law

nature of the plaintiff's breach of contract claim alleging that DHL's insurance

covers MVP and Mr. Porter, who are liable for the accident, into a claim arising

under federal law for purposes of 28 U.S.C. § 1331.

　　　To establish that a state-law claim arises under federal law by posing a

federal question sufficient to confer subject matter jurisdiction, a removing party

bears the burden to satisfy a three-part test:  (1) the  "state-law claim [must]

necessarily raise a stated federal issue"; (2) the federal issue must be  "actually

disputed and substantial"; and, (3) the exercise of federal jurisdiction must not

"disturb . . . any congressionally approved balance of federal and state judicial

responsibilities."  Grable & Sons Metal Products, Inc., 545 U.S. at 314 (2005).

Within the federal courts' limited original jurisdiction, only a  "special and small"

category of cases that allege a state-law claim meet the test for arising under federal law.  Empire Healthchoice Assurance, Inc., 547 U.S. at 699.

To be "necessary" to a state-law claim, a federal issue must be one that is an essential component of the claim.  Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 808-09 (1986) (citing Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 9 (1983) and cautioning that even a critical federal-law issue is not alone sufficient to confer federal-question jurisdiction); Empire Healthchoice Assur., Inc., 547 U.S. at 701.  A federal issue that arises as a defense or as an anticipated defense never confers federal-question jurisdiction.  Merrell Dow Pharmaceuticals Inc., 478 U.S. at 808; Franchise Tax Bd. of Cal., 463 U.S. at 14.  And  "[w]here a federal issue is present as only one of multiple theories that could support a particular claim, . . . [it] is insufficient to create federal jurisdiction."  Broder v. Cablevision Systems Corp., 418 F.3d 187, 194 (2d Cir. 2005) (citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 810 (1988)).

Although the defendants address this first prong of their Grable burden in only a cursory way, it is nevertheless apparent that the only federal issues in plaintiff Carlson's claim that may arguably not involve defenses or anticipated defenses that are allegedly nullified by the MCS-90 endorsement involve whether the language of the MCS-90 endorsement expands coverage under the AAIC-DHL policy beyond the named insureds in the policy.  Doc 32-1, pp. 14-15.

Recovery for negligence pursuant to the MCS-90 endorsement may be had

"regardless of whether or not each vehicle is specifically described in the policy

and whether or not such negligence occurs on any route or in any territory

authorized to be served by the insured or elsewhere."  Doc 7-2.  As stated in the

plaintiff's pleadings, however, this is an alternative ground supporting the

plaintiff's breach of contract and direct recovery claim that is based upon DHL's

insurance covering MVP and Mr. Porter because they were permissive,

authorized users, and independent contractors, in light of the language of the

policies, the written cartage agreement, and the parties' course of dealing.  Doc.

2-2, see Docs. 6-3, 7-9, 7-10.  The plaintiff may well be able to obtain all the relief

which he seeks without invoking the MCS-90 endorsement in the AAIC-DHL

policy.  A federal issue that arises only in support of an alternative theory in

support of a state-law breach of contract claim is not  "necessary"  to the claim

and does not support the exercise of federal-question jurisdiction.  Broder, 418

F.3d at 194.

The defendants construe the MCS-90 endorsement to limit the definition of

insured persons in motor carrier insurance policies to those explicitly named as

insureds notwithstanding any conflicting interpretation of the policies that may

apply pursuant to applicable state law.  See Doc. 32-1, p. 15, n.13 (citing

Regulatory Guidance for Forms Used to Establish Minimum Levels of Financial

Responsibility of Motor Carriers, 70 Fed.Reg. 58065-01 (October 5, 2009)).  Yet

this demonstrates that the defendants consider the MCS-90 endorsement,

properly understood, as a defense to plaintiff Carlson's breach of contract claim.

Federal issues arising as a defense or anticipated defense never confer federal-

question jurisdiction. Merrell Dow Pharmaceuticals Inc., 478 U.S. at 808.

 The defendants' nearly exclusive reliance upon the federal character of the

MCS-90 endorsement and Monroe Bus Corp. in support of their arguments that

plaintiff Carlson's claim arises under federal law, together with their failure to

address in any detail the "necessity" prong of the Grable three-part test as it is

applicable in this case, suggests that the defendants confuse the Court's

prudential jurisdictional review of the plaintiff's pleadings with a determination on

the merits whether the plaintiff states a claim upon which relief can be granted.

The Second Circuit has emphasized that:

> It follows from our exclusive focus on the [well-pleaded]
> complaint in determining federal question jurisdiction,
> moreover, that whether a plaintiff has pled a jurisdiction-
> conferring claim is a wholly separate issue from whether
> the complaint adequately states a legally cognizable
> claim for relief on the merits.

Southern New England Telephone Company v. Global Naps, Inc., 624 F.3d 123,

132 (2d Cir. 2010). The defendants' arguments presume, based upon their

motions to dismiss, that the plaintiff's state-law claim that DHL's insurance

contractually covers MVP and Mr. Porter has no viability on the merits

independent of the MCS-90 endorsement. The effect of the presumption is to

emphasize the federal issues involving the MCS-90 endorsement without consideration of the state-law issues that predominate in the plaintiff's pleadings.

It may be that plaintiff Carlson's state-law claim is not viable. But the Court can express no view on the legal viability of the plaintiff's claim that is not merely advisory because the threshold question before the Court is whether the plaintiff's claim is one over which the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. See Montefiore Medical Center v. Teamsters Local 272, 642 F.3d 321, 327 (2d Cir. 2011). The Court's assessment of the plaintiff's state-law breach of contract and direct recovery claim is informed by the principles pursuant to which the Court determines its strictly limited subject matter jurisdiction and by appropriate respect for the state forum from which the case was removed. With these principles in mind, the Court finds that the defendants have failed to meet their threshold burden to show that a federal issue is a necessary component of the plaintiff's claim.

The defendants' burden on the second prong of the Grable test is whether a "necessary" federal issue is an "actually disputed and substantial issue." Grable, 545 U.S. at 314. While the Court has concluded that there is no "necessary" federal-law issue, the Court acknowledges that the defendants dispute plaintiff Carlson's allegation that the MCS-90 endorsement expands coverage to unnamed insureds. The defendants construe the MCS-90 endorsement strictly to limit the definition of insured persons in motor carrier

19

insurance policies to those explicitly named as insureds notwithstanding any conflicting interpretation of the policies pursuant to applicable state law.  It would potentially be a substantial dispute.  Compare Pierre v. Providence Washington Ins. Co., 99 N.Y.2d 222, 230-37 (2002); with Illinois Nat. Ins. Co. v. Temian, 779 F.Supp. 2d 921, 926 (N.D. Ill. 2011).  If the plaintiff's MCS-90 theory were the only theory the plaintiff were advancing in support of the plaintiff's claim, and if it were established that the theory would be necessary to establish the claim, the theory would present a substantial and disputed issue.

There remains some question whether the MCS-90 endorsement will actually be disputed in this case, however.  A substantial body of case law holds that an MCS-90 endorsement is not triggered when the mandatory-minimum coverage is paid in full by another insurer.  See e.g., Zurich American Ins. v. Grand Ave. Transport, 2010 WL 682530 (N.D. Cal., Feb. 23, 2010) (citing authority in the First, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth and Tenth Circuits).  On January 24, 2012, more than $1 million of insurance proceeds were deposited with the Clerk of the Court that are due to Ms. D'Agostino Carlson's Estate and to Mr. Carlson in a related case pending before me on account of the tragic accident that took Ms. D'Agostino Carlson's life.  The Cincinnati Insurance Company v. The MVP Delivery and Logistics, Inc., William Porter, and Michael J. Carlson, Sr., Individually and as Administrator of the Estate of Claudia D'Agostino

<u>Carlson, deceased</u>, 11-CV-506-A, Doc. 24 and (Remark filed 1/24/2012)[5].   The

Second Circuit, and no district court in the Circuit, have addressed whether the

MCS-90 endorsement applies if the mandatory-minimum recovery is being paid.

The parties have not informed the Court whether the mandatory-minimum

coverage applicable to the AAIC-DHL policy is the $750,000 applicable to

nonhazardous property carriers or the $5,000,000 applicable to hazardous

substance carriers.   Nevertheless, because the defendants have not satisfied

their burden to establish that there is a  "necessary"  federal issue raised by the

plaintiff's claim that is also an  "actually disputed and substantial issue,"  the

Court need not address whether the MCS-90 endorsement in the AAIC-DHL

policy will be a nullity if the federal mandatory-minimum coverage is satisfied by

the money deposited with the Clerk of the Court.

          The third and final prong of the <u>Grable</u> test for whether a state-law claim

arises under federal law is whether the claim is one  "which a federal forum may

entertain without disturbing any congressionally approved balance of federal and

state judicial responsibilities."  <u>Grable</u>, 545 U.S. at 314.   Congress has not

expressly provided a private right of action to enforce the financial security

provisions of the Motor Carrier Act of 1980.  <u>See</u> 49 U.S.C. § 31138(d); <u>but see</u>

---

[5] This related case, which is pending on diversity jurisdiction, concerns the amount of interest accruing on the insurance proceeds and taxable costs that are due to Ms. D'Agostino Carlson's Estate and to Mr. Carlson at the very high statutory rate of interest provided under New York law.

49 U.S.C. § 14704(a)(2).  The rare state-law claim that actually arises under federal law is one which  "really and substantially involv[es] a dispute or controversy respecting the validity, construction or effect of [federal] law."  Grable, 545 U.S. at 313 (quotation omitted).  "[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum."  Id.  The defendants have not addressed how these concerns of federalism and respect for the courts of the state forum are to be balanced in this particular case.

    This insurance coverage dispute is fairly unusual.  It is unlikely that exercising federal jurisdiction would inflict  "a horde of original filings and removal cases raising other state claims with embedded federal issues" on the courts. Grable, 545 U.S. at 318.  Nevertheless, the defendants have established nothing more than the mere presence of federal issues in plaintiff Carlson's breach of contract and direct recovery claim, a  "fact-bound and situation-specific" claim that should proceed in the state forum from which it was removed out of deference to the state forum.  Empire Healthchoice Assur., Inc., 547 U.S. at 700. Because the defendants have failed to carry their burden to establish that the plaintiff's state-law claim arises under federal law as required by 28 U.S.C. § 1331, subject matter jurisdiction is lacking.

## CONCLUSION

For all of the reasons that are stated above, the Court finds that plaintiff Carlson's claim does not arise under federal law and that the Court lacks subject matter jurisdiction over this action.  The finding that the plaintiff alleges no federal question moots the plaintiff's argument that the removal petition was filed too late; the case was never removable.  Pursuant to Fed. R. Civ. P. 12(h)(3) and 28 U.S.C. § 1447(c), the Clerk of the Court shall remand the case to New York State Supreme Court, Niagara County.  The Clerk shall mail a certified copy of this Decision and Order to the clerk of the state court.  The Clerk of Court shall take all steps necessary to close this case

SO ORDERED.

_s/ Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED:April 10, 2012